### BARKER v. KLINGLER.

1. EJECTMENT—PLAINTIFF MUST RELY ON OWN, NOT WEAKNESS OF DEFENDANT'S, TITLE.

To prevail in an ejectment proceeding a plaintiff must rely upon the strength of his own title, not on the weakness of defendant's title.

2. SAME—EQUITABLE RIGHTS.

In an action of ejectment the court cannot take cognizance of whatever equitable rights defendants may have had in the lands involved.

3. VENDOR AND PURCHASER—TITLE—PAYMENT OF PURCHASE PRICE.

The vendee in a land contract is vested with the equitable title in the land and the legal title remains in the vendor and is held as security for the purchase price, upon payment of which the vendee is entitled to a conveyance of the legal title.

4. EJECTMENT—EQUITABLE TITLE.

In an action of ejectment an equitable title cannot be set up as defense against a legal title.

5. SAME—LAKESIDE LOT—EQUITABLE TITLE.

In action of ejectment against owners of three lots in a lakeside tract of land to determine title of some intervening and adjacent strips of land and existence of an easement, plaintiffs who had merely a vendee interest under a land contract at time of execution of deed to defendants to questioned land by then holder of title may not prevail, since plaintiffs had merely an equitable title, unenforceable in action of ejectment against holder of prior legal title.

Appeal from Ionia; Hawley (Royal A.), J. Submitted April 8, 1942. (Docket No. 33, Calendar No. 41,655.) Decided June 10, 1942.

Ejectment by Glenn E. Barker and others against Bruce C. Klingler and wife to determine title to lands. Judgment for defendants. Plaintiffs appeal. Affirmed.

*Floyd W. Cone,* for plaintiffs.

*Eldred & Gemuend,* for defendants.

SHARPE, J.    This is an action in ejectment to try title to certain property conveyed by Mary Whitford, a common grantor, to both plaintiffs and defendants.

Prior to 1933, one Edmund E. Whitford was the sole owner of about 20 acres of land in Orleans township, Ionia county, Michigan, lying adjacent to Long lake.   About 1933, defendants, Bruce C. Klingler and wife, entered into an agreement to purchase some of this land.   No land contract was ever executed by the parties, but the purchase price was paid in full by the defendants who went into possession of the land and in 1935 built a summer cottage.   Edmund E. Whitford died in March, 1937, never having executed any deed to defendants.

Edmund E. Whitford during his lifetime had contemplated platting this entire 20 acres and in June, 1935, engaged a civil engineer who made a survey and a proposed plat of the property.   This plat was never recorded, but the parties have stipulated that it should be submitted to us; and we are including a diagram of a portion thereof and for convenience in identifying the property in dispute we will refer to the parcels by the lot numbers on the proposed plat.

Defendants' cottage is located about five feet from the rear of lot 29 and for some time prior to October, 1937, defendants occupied and used the entire lot to the water's edge, filling in a low spot in front of the cottage and planting shrubbery.   They had also occupied lots 50 and 51, marking the corners by stones and taking dirt therefrom for the fill in front of the cottage.

It is undisputed that record title to the entire 20 or more acres became vested in Mary Whitford,

widow of Edmund E. Whitford. On October 25, 1937, she entered into an agreement with plaintiffs for the sale of the entire 20 or more acres with the following provision:

"excepting   *   *   *   and also reserving certain lands in the within description belonging to Bruce Klingler."

Following this agreement, some attempt was made to get a description of defendants' property, but this failed and on January 27, 1938, Mary Whitford executed a deed to defendants conveying to them only a piece of property 100 feet by 40 feet upon which their cottage was located. The deed contained the following provision:

"Above description includes full access to the lake frontage for personal use, and is restricted as to concessions or business enterprises."

This deed was sent to defendants who were then residing in Syracuse, New York. It was held by them until they could return to Michigan and was recorded by Mrs. Klingler on August 12, 1938.

Shortly thereafter, defendants discovered that the deed did not cover all of the property which they had purchased. On November 19, 1938, Mrs. Whitford executed a "correction" deed to defendants covering all of what appears on the diagram as lots 29, 50 and 51, the 20-foot strip of land between lots 29 and 51, the 20-foot strip of land along the easterly side of lots 50 and 51, and the right of ingress and egress over and across certain described property. This deed was recorded November 21, 1938.

Prior to the November, 1938, conveyance to defendants and on March 8, 1938, a land contract was executed between Mary Whitford and plaintiffs Elizabeth Barker and Donald G. Barker which was never recorded. It included all of the 20 acres except a lot 100 feet by 40 feet which Mrs. Whitford had conveyed to defendants on January 27, 1938, and lots 50 and 51. Pursuant to this contract and on July 18, 1939, a deed was executed to plaintiffs covering all of the land described in their land contract.

In October, 1939, plaintiffs filed an action in ejectment for possession of (1) the strip of land in lot 29, seven feet at one end, 22 feet at the other end and 40 feet long, along the lake shore, (2) the parcel of land 20 feet wide at the rear of the cottage and between lots 29 and 51, (3) a strip of land 20 feet wide along the east boundaries of lots 50 and 51, (4) the land covered by the easement granted in defendants' deed of November, 1938. They claim title to this property under the land contract of March 8, 1938, and the deed of July 18, 1939.

Defendants answered and claim title to the disputed property by virtue of their prior deed of November 19, 1938, and claim that this deed was made pursuant to contracts and agreements originally made with Edmund E. Whitford; that for several

years prior to March 8, 1938, they were in continuous possession of the property covered by their deed of November, 1938; and that plaintiff had notice of this possession.

The trial court held that defendants have title to the land in dispute by virtue of their prior deed of November 19, 1938, and dismissed the plaintiffs' cause of action.

Plaintiffs appeal and contend that the so-called correction deed of November, 1938, was as to all except lots 50 and 51 not a correction deed, but a conveyance enlarging the estate of the defendants; that under the land contract with plaintiffs, Mrs. Whitford held the title to the disputed property for security and as trustee for plaintiff; and that on November 19, 1938, she had no title which she could convey to defendants.

This is an ejectment action. In the recent case of *Briggs* v. *Prevost,* 293 Mich. 677, the rule applicable here was stated:

"It is elementary that to prevail in an ejectment proceeding the plaintiff must rely upon the strength of his own title, not on the weakness of defendant's title. *Ridgley* v. *Roma,* 282 Mich. 682. Clearly in such case a plaintiff could not prevail if defendant had a prior valid title."

Following the death of Edmund E. Whitford, legal title to the property became vested in Mary Whitford. This record contains no evidence of a valid contract between Edmund E. Whitford and defendants which would pass legal title. In this action we cannot take cognizance of whatever equitable rights defendants may have had. *Michigan Land & Iron Co.* v. *Thoney,* 89 Mich. 226, and cases cited therein.

Because, in ejectment, plaintiffs' recovery, if any, must rest upon the strength of their own title (*Bruun*

v. *Cook,* 280 Mich. 484; *Ridgley* v. *Roma, supra*), we, therefore, first examine plaintiffs' title. Plaintiffs' claim to prior legal title to the property in dispute is based upon their land contract of March 8, 1938, and the subsequent deed. They contend that the deed related back to the time of the land contract; and that defendants' intermediate conflicting deed from the same grantor had no priority and rely upon *Seager* v. *Cooley,* 44 Mich. 14.

In that case one Cooley instituted an action of ejectment for a strip of land in Seager's possession. Seager brought a bill for a decree declaratory of his rights and perpetually enjoining their infringement. Both Seager and Cooley derived title under Loeher. Seager claimed title under a land contract of February 5, 1859, and deed of March 6, 1861. Cooley traced title by mesne conveyances from Loeher to Disbrow by warranty deed executed February 23, 1860; a deed from Disbrow to Knapp executed January 1, 1861; and a deed from Knapp to himself executed subsequent to the deed from Loeher to Seager. The court said:

"The point is made that the bill is wanting in equity on the ground that complainant's case might have been used as defense in the ejectment.

"The position is not tenable. The decision there must have been in favor of the superior legal title, and that seems to have been in Cooley. His claim is under Loeher, the common source of title, and through a deed from him prior to that held by complainant, and such priority implies a legal preference in the competition between the parties for quantity. That being the case, the only chance left to complainant was to establish that this apparent legal advantage was actually subject to a controlling equity in his favor, and this is the ground he takes. He shows that the making use of the earlier date of the grant

to Disbrow from Loeher, the source of all titles, in order to divest him of a part of what Loeher sold him and a part of his actual holding, is inequitable and ought not to be allowed. His (complainant's) contract entitled him to a full acre next to the excepted parcel. It was the first sale made by Loeher, and preceded by a considerable time the sale to Disbrow. In virtue of it complainant became equitable owner.''

The above case, being in equity, does not support plaintiffs' claim.

It is well settled in this State that the vendee in a land contract is vested with the equitable title in the land, and that the legal title remains in the vendor and is held as security for the payment of the purchase price of the land, upon the payment of which the vendee is entitled to a conveyance of the legal title. *Hooper* v. *Van Husan,* 105 Mich. 592; *Stevens* v. *DeBar,* 229 Mich. 251; *In re Estate of Jeffers,* 272 Mich. 127; *Lutz* v. *Dutmer,* 286 Mich. 467. Plaintiffs' rights, if any, under the land contract were equitable.

''Nothing is better settled in this State than that in an action of ejectment an equitable title cannot be set up as defense against a legal title. *Buell* v. *Irwin,* 24 Mich. 145; *Ryder* v. *Flanders,* 30 Mich. 336; *Harrett* v. *Kinney,* 44 Mich. 457; *Geiges* v. *Greiner,* 68 Mich. 153.'' *Michigan Land & Iron Co.* v. *Thoney,* 89 Mich. 226, 231.

See, also, *Thompson* v. *Doore,* 269 Mich. 466.

Plaintiffs' equitable title under the land contract cannot be enforced in this action against defendants who have shown a prior legal title.

The judgment is affirmed, with costs to defendants.

CHANDLER, C. J., and BOYLES, NORTH, STARR, BUTZEL, and BUSHNELL, JJ., concurred. WIEST, J., took no part in this decision.