HENRIETTA P. GAGE, ADM'X v. WILLIAM JENKINSON, JESSE C. TRYON AND SETH D. THOMPSON.

58   169
f118   635

*Mortgage—Personal liability of third persons.*

1. One who takes a deed of mortgaged land will be personally liable on the foreclosure of the mortgage if his deed expressly binds him to pay it; but a covenant to do so cannot be implied by either deed or mortgage.

2. The statutory jurisdiction to enforce the collateral obligations of third persons upon a mortgage foreclosure is permissive and not obligatory and will not be exercised to their prejudice unless they have made it necessary by their own agreements.

3. Whether, on mortgage foreclosure, a personal liability can be enforced against one who is not a party to the mortgage but has bought the land subject thereto and without making anything more than a parol agreement with the grantor to pay it—Q.

Appeal from Kalamazoo. (Mills, J.)   June 18.—Sept. 29.

FORECLOSURE bill. Complainant appeals. Affirmed.

*S. W. Oxenford* and *Henry F. Severens* for complainant.

*Edwin M. Irish* for defendants Jenkinson and Thompson.

SHERWOOD, J.   On the 26th day of June, 1877, the defendant Jesse C. Tryon was owner of 117 acres of land in the township of Brady, Kalamazoo county. On this land, previous to the commencement of this suit, he gave the following mortgages: November 1, 1871, to F. W. Curtenius, $2500; April 5, 1876, to William Jenkinson, $500; May 27, 1876, to Bradley S. Williams, $472; November 13, 1876, to Scott & Sabin, $400; November 13, 1877, to Charles Gage, $600. The bill in this case is filed to foreclose the last-mentioned mortgage by Mrs. Gage, as administratrix of her husband's estate.

On the 26th day of June, 1877, aforesaid, Tryon and his wife made a quitclaim deed of the land to defendant William

Jenkinson. On that day large amounts of unpaid interest had accumulated on these mortgages, and Tryon was further indebted to Jenkinson in items amounting to about the sum of $700. The mortgage given to Curtenius was subsequently assigned by him to Charles Bell, and is called in the pleadings in this case the Bell mortgage.

The bill was filed on the 30th day of October, 1880, for the purpose of foreclosing the Gage mortgage, and for the further purpose of obtaining a personal decree against the defendant Jenkinson. The bill avers that at the time Jenkinson received said quitclaim deed of the mortgaged premises the purchase price agreed to be paid by him therefor was $6000, which, by the agreement between him and defendant Jesse Tryon, was to be paid and applied as follows : $2991 to the payment of the Bell mortgage ; $561 to the payment of the Jenkinson mortgage; $523 to the payment of the Williams mortgage ; $642.70 to the payment of the Gage mortgage ; $672 to the payment of other indebtedness from Tryon to Jenkinson ; and for the payment of the balance of the $6000 said Jenkinson gave said Tryon his promissory note ; that the conveyance from Tryon to Jenkinson was for such agreed consideration ; and that the amount above stated of the purchase price was left in the hands of Jenkinson by Tryon, as aforesaid, in trust for the payment of the mortgages above mentioned, including the mortgage to the complainant's intestate ; and that Jenkinson became a trustee under such agreement to the amount of the Gage mortgage, and liable for the payment thereof. Complainant further avers that Jenkinson has had the rents and profits of the farm ever since he received his conveyance from Tryon, and neglects to discharge his trusts by payment of the Gage mortgage ; and that the defendant Thompson is Jenkinson's lessee, and claims to be the owner of the Jenkinson and Williams mortgages. Complainant further avers that Jenkinson transferred his mortgage to Thompson, for the purpose of keeping it in existence as a prior mortgage to that represented in this suit by complainant.

The bill was taken as confessed by defendant Tryon, and Jenkinson and Thompson filed their several answers.

Thompson, in his answer, admits the deed from Tryon to Jenkinson; denies upon information and belief that Jenkinson agreed with Tryon to pay $6000 for the farm, or that he was to pay the same as alleged in the bill of complaint; avers he is the owner of the Jenkinson and Williams mortgages, and has redeemed the premises from the lien of the Bell mortgage, and that they are all valid liens upon the property, the Bell mortgage being a first lien; that the mortgages amounted, at the time he purchased the Williams and Jenkinson claims, to more than the property was worth; that when he received possession of the farm of Jenkinson, he expected to buy in all the claims against the property if he could make the necessary arrangements therefor, and ultimately own the property; that he has no knowledge of the amount due or owing upon the Gage mortgage, but avers that he purchased the claims he has stated in good faith, and that they are prior liens to the Gage mortgage, and insists that any decree for sale made in this suit to satisfy the last-named mortgage must be subject to his aforesaid liens.

Jenkinson, in his answer, admits the Gage mortgage, and that he received from Tryon and wife the quitclaim deed mentioned in the bill, but denies that the purchase price agreed upon to be paid by him was $6000, when the deed was made, or that there was any agreement made by which he was to pay the outstanding mortgages, or any part thereof; and avers that in taking the deed of the land from Tryon he purchased merely the equity of redemption of Tryon in the same, and made no agreement to assume and pay off the incumbrances. And, further answering, Jenkinson avers that at the time he took said deed, Tryon was owing him, besides what was secured by his mortgage, upwards of $400, and was at the time insolvent, and that his object in purchasing the equity of redemption was to realize, so far as possible, the amount of said indebtedness. He further denies that by agreement with Tryon, or in any other way, he ever became liable to pay complainant's mortgage, or any part

thereof, and admits by an agreement in writing he did, after receiving the deed, let defendant Thompson in possession of the farm.

This statement from the pleadings is all we deem necessary for the consideration of the case as presented upon the record. It was heard on pleadings and proofs before Judge Mills, who after a careful examination of the matter entered the usual decree of foreclosure, and held Jenkinson not personally liable. We think his decree was right and ought not to be disturbed. The complainant appeals.

The personal liability of Jenkinson is the only question presented needing discussion. There is no covenant in Jenkinson's deed or in writing anywhere by which he agrees to pay the complainant's mortgage or any of the incumbrances. Our statutes provide that "If the mortgage debt be secured by the obligation or other evidence of debt of any other person besides the mortgagor, the complainant may make such person a party to the bill, and the court may decree payment of the balance of such debt remaining unsatisfied, after a sale of the mortgaged premises, as well against such other person as the mortgagor, and may enforce such decree as in other cases." How. Stat. § 6704. If a grantee accept a deed subject to mortgage incumbrances upon the property conveyed, containing a clause that he shall pay the incumbrances, he will then become liable for the payment thereof, and a personal decree may be rendered against him upon a foreclosure. *Crawford v. Edwards* 33 Mich. 354; *Miller v. Thompson* 34 Mich. 10; *Taylor v. Whitmore* 35 Mich. 97; *Carley v. Fox* 38 Mich. 387; *Hicks v. McGarry* id. 667; *Booth v. Connecticut Mut. L. Ins. Co.* 43 Mich. 299; *Townsend v. Tudor* 41 Mich. 263. No such promise, however, is claimed to have been made by Jenkinson in writing, and no such agreement can be implied in the conveyance. The statute expressly prevents any such implication. The provision upon that subject says: "No covenant shall be implied in any conveyance of real estate, whether such conveyance contain special covenants or not."

How. Stat. § 5655 ; _Brown v. Phillips_ 40 Mich. 267. And it is further provided in this connection that "No mortgage shall be construed as implying a covenant for the payment of the sum thereby intended to be secured ; and where there shall be no express covenant for such payment contained in the mortgage, and no bond or other separate instrument to secure such payment shall have been given, the remedies of the mortgagee shall be confined to the lands mentioned in the mortgage." How. Stat. § 5656.

The practice in this class of cases of allowing a personal decree against even the mortgagor himself comes from no original equitable jurisdiction, but springs from quite recent statutory authority ; and the enforcement of collateral obligations of third persons in a foreclosure suit is a still more recent innovation, and the jurisdiction given over the latter class of persons is permissive only, and not obligatory, and will not be enforced to their prejudice, unless by their own contract or agreement they have themselves made necessary or imperative such enforcement. _Johnson v. Shepard_ 35 Mich. 115 ; _McCrickett v. Wilson_ 50 Mich. 513. There is no pretense in this case that the claimed liability of Jenkinson could be enforced at law. The only contract between the mortgagor and Jenkinson, except that contained in the quitclaim deed, rested in parol, as stated by the complainant in her bill ; and counsel for defendant raises the question whether in this case, under such circumstances, Jenkinson, who is not a party to the mortgage, and who has never agreed in writing with any one to pay it, can be subjected to a personal decree for its payment.

While as at present advised my mind inclines strongly to the negative upon this question, it is not necessary to decide that question now. The bill of complaint states a different and broader case, and if fully sustained by the proofs I am not prepared to say that the complainant would not be entitled to the relief prayed for. The complainant sets up a contract made by the mortgagor with Jenkinson, by which it is averred that Jenkinson bought the land for the sum of $6000 ; that that was the sum the latter promised to pay

therefor, and in so doing agreed with the mortgagor that he would pay all the mortgages, discharge the mortgagor's indebtedness to him, and give his (Jenkinson's) note to mortgagor for the balance ; and that in pursuance of said contract he had given his note for the balance, his own debt had become merged, and he had paid, or caused to be paid, one of the mortgages and had taken possession of the mortgaged premises under his deed, and was then in the possession of the receipts, rents and profits thereof.   These facts present a case of parol contract, partly performed, about as strong as it can be made without being in writing, and while there can be no question about its legal or equitable effect between .the parties thereto, there still remains the question, how far it can be enforced between Jenkinson and this complainant, between whom there is no privity evidenced by any writing whatever.

The question might be one of some difficulty to dispose of if we were called upon to dispose of it in this case, as the authorities and dicta upon the question are not entirely harmonious.   See cases cited and *Burke v. Gummey* 49 Penn. St. 518 ; *Heid v. Vreeland* 30 N. J. Eq. 591 ; *Wilson v. King* 23 N. J. Eq. 150 ; *Bowen v. Kurtz* 37 Ia. 239 ; 1 Jones on Mortgages §§ 740, 750 ; *Shuler v. Hardin* 25 Ind. 386 ; *Braman v. Dowse* 12 Cush. 227 ; *Hoff's Appeal* 24 Penn. St. 200–204 ; *Thompson v. Thompson* 4 Ohio St. 349 ; *Gilman v. Williams* 7 Wis. 336 ; *Mellen v. Whipple* 1 Gray 317.

We have carefully examined the record and the testimony in the case, and without any discussion of it here, will only say further that we do not think it preponderates in favor of the averments contained in complainant's bill, and we all think the decree of the circuit judge should be

·Affirmed, and the defendants Jenkinson and Thompson will recover their costs.

Cooley, C. J. and Campbell, J. concurred.